# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: April 26, 2023

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| CHARLES J. KEYSER, | * | No. 20-1313V |
| | * | |
| Petitioner, | * | Special Master Sanders |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

### ORDER DISMISSING PETITIONER'S TABLE CLAIM[1]

On October 2, 2020, Petitioner filed a petition alleging that he suffered from Guillain-Barré Syndrome ("GBS") as a result of an influenza ("flu") vaccination administered on October 9, 2017. Pet. at 1, ECF No. 1. This case was assigned to the Special Processing Unit ("SPU"). ECF No. 8. On May 11, 2021, Respondent filed his Rule 4(c) report. Resp't's Report, ECF No. 14. Respondent argued that Petitioner's symptoms began two days post vaccination and therefore did not begin in the timeframe specified by the Vaccine Injury Table as required for a presumption of vaccine causation. *Id.* at 10 (citing 42 C.F.R. § 100.3(a)(III)(B)). Respondent also argued that Petitioner had not presented preponderant evidence pursuant to *Althen* that his injury was caused-in-fact by his vaccination. *Id.* at 10–11.

On August 14, 2021, the chief special master issued an order to show cause as to why Petitioner's claim should not be dismissed. Show Cause Order, ECF No. 17. The chief special master noted some details from Petitioner's medical records. *Id.* at 2. Petitioner reported two weeks of lower back pain extending down the back and front of his legs to his primary care physician ("PCP") on October 24, 2017, which places the onset of symptoms on approximately October 10, 2017. *Id.* (citing Pet'r's Ex. 3 at 110, ECF No. 1-5). Petitioner's PCP assessed him with degenerative disc disease with suspected mild nerve impingement. *Id.* (citing Pet'r's Ex. 3 at 113).

---

[1] Because this Order contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Order will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

Two weeks later, on November 7, 2017, a physiatrist attributed Petitioner's symptoms to lumbar spondylosis and degenerative disc disease. *Id.* (citing Pet'r's Ex. 4 at 17, ECF No. 1-6). On November 28, 2017, Petitioner went to the emergency room ("ER") complaining of progressive bilateral lower extremity weakness that began two days after his flu vaccination. *Id.* (citing Pet'r's Ex. 5 at 22, ECF No. 1-7). Petitioner had a lumbar puncture consistent with GBS, and he experienced improvement after receiving treatment with IVIG. *Id.* (citing Pet'r's Ex. 5 at 47, 50, 57). The chief special master also noted that he "recently dismissed a claim where onset of GBS symptoms was too close in time to vaccination to be medically acceptable." *Id.* He continued, "other previous flu-GBS non-Table claims adjudicated in the Program have mostly not succeeded where onset occurred earlier than three days after vaccination." *Id.* at 2–3. The chief special master explained that these previous "determinations do not control the outcome in this case, [but] they demonstrate that what is known medically/scientifically about the pathogenesis of GBS weighs against findings of flu vaccine causality when onset is too close temporally to the vaccination event." *Id.* at 3.

In response, Petitioner asserted that he suffered from unrelated back pain before the onset of his GBS and that "[t]he two-day onset period referenced in the medical records relates to the onset of [his] back pain . . . and *not* the onset of his GBS." Pet'r's Resp. at 1, ECF No. 20 (emphasis in original). Petitioner contended that his GBS symptoms began in early to-mid November 2017, specifically sometime after November 7, 2017, and before November 28, 2017. *Id.* at 7, 9. He noted that "there was no notation of absent reflexes characteristic of GBS" and no balance of coordination issues on November 7, 2017, but Petitioner had absent reflexes on November 28, 2017. *Id.* at 8. He stated that he was hospitalized at the nadir of his symptoms, on November 28, 2017. *Id.* He argued that, based on the typical trajectory of GBS, his nadir of weakness would have occurred before that date if the onset of his GBS was two days post vaccination. *Id.* (citing 42 C.F.R. § 100.3(c)(15)(i)). He differentiated his initial back pain from his GBS symptoms and argued that his initial back pain was "entirely consistent with lower back pain caused by his left L2-3 disk herniation causing cord compression." *Id.* Petitioner also argued that his contention that his back pain and GBS occurred concurrently is supported by his improvement of GBS symptoms and continuing treatment for back pain. *Id.* at 10. Petitioner asserted that "his GBS symptoms began within the 3–42 day Table period entitling him to a presumption that his GBS was caused by his flu vaccination." *Id.* at 1. He requested that his claim be analyzed as a causation-in-fact claim and that he be given the opportunity to file an expert report if the special master finds "that Petitioner's back pain was the genesis of his GBS[.]" *Id.*

Respondent argued that Petitioner's claim should be dismissed because "if [his] GBS symptoms began two days after vaccination, as reflected in the records, then onset occurred too close in time to vaccination to be medically acceptable." Resp't's Resp. at 10, ECF No. 21. He argued that "[a]lternatively, if the Court finds that [P]etitioner's GBS symptoms began in 'early to mid-November 2017,' . . . then [P]etitioner has not met the Vaccine Act's sixth [sic] month severity requirement." *Id.* (citing 42 U.S.C. § 300aa-11(c)(1)(D)(i)). Respondent contended that "[P]etitioner's GBS resolved prior to May 1, 2018, when he was discharged from physical therapy [ ] after meeting all of his goals and ambulating without assistance." *Id.* at 11 (citing Pet'r's Ex. 7 at 84–86, ECF No. 1-9). Respondent contended that "[t]he record evidence is clear that [P]etitioner's episode of GBS resolved quickly." *Id.* at 12. Respondent asserted that "[P]etitioner

2

himself attributes [his back and leg pain occurring after May 1, 2018] to his radiculopathy[]" rather than GBS. *Id.*

Although Petitioner did not assert a Table claim in his petition, he argued in his response that he is entitled to the Table's presumption of causation because the onset of his GBS occurred within the 3–42-day timeframe specified in the Table. However, without addressing the onset of Petitioner's GBS, the Table's qualifications and aids to interpretation ("QAI") specify that "[t]o qualify as any subtype of GBS [under the Table], there must not be a more likely alternative diagnosis for the weakness." 42 C.F.R. § 100.3(c)(15)(v). In this case, Petitioner had diagnoses of lumbar spondylosis and degenerative disc disease, and the medical records show overlap between his symptoms attributed to those conditions and his symptoms related to GBS. While Petitioner has alleged that his GBS symptoms began after November 7, 2017, he reported symptoms consistent with GBS including "walking differently[]" and having "sat down on his right knee and [having] extreme difficulty getting back up[]" to his PCP on October 24, 2017. Pet'r's Ex. 3 at 109–10. On November 7, 2017, Petitioner presented to a physiatrist, who found on exam that Petitioner had painful motion and decreased range of motion in his lumbar spine, antalgic gait, and decreased reflexes in the right patellar joint. Pet'r's Ex. 4 at 12, 15–16. The assessment included paresthesia of the skin, numbness and tingling, left leg pain, and bilateral lower extremity pain as well as lumbar degenerative disc disease and lumbar spondylosis. *Id.* at 17. When Petitioner presented to the ER on November 28, 2017, he reported that "over the past week [he] had progressive bilateral lower extremity weakness. He state[d] this started [two] days after he got a flu shot[. He had] paresthesias [and] had back pain, and then he started having the weakness." Pet'r's Ex. 5 at 22. Due to the overlap between the GBS symptoms and lumbar symptoms, and the fact that they manifested during the same time period, I find by a preponderant standard that Petitioner's unrelated lumbar conditions constitute more likely alternative causes for Petitioner's weakness. In light of this disqualifying factor, I hereby **DISMISS** Petitioner's Table claim.

Respondent has argued that, if Petitioner's asserted onset date is correct, his causation-in-fact claim should be dismissed due to his inability to satisfy the six-month severity requirement. However, despite Petitioner's contention of when his GBS symptoms began, the onset date remains unclear. Furthermore, there is some suggestion in the medical record that Petitioner may have experienced sequela of GBS after May 1, 2018. For instance, following an initial physical therapy evaluation on February 7, 2019, the evaluating physical therapist wrote that Petitioner's "symptoms are likely a hold over from his bout of GBS last year." Pet'r's Ex. 7 at 89–90. I will allow Petitioner the opportunity to submit an expert report addressing the onset and duration of his GBS symptoms, as well as the *Althen* prongs.

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master